UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA                    CRIMINAL NO: 13-CR-10077-DJC

v.

COREY NORRIS

DEFENDANT COREY NORRIS'S SENTENCING MEMORANDUM

Now comes Defendant, Corey Norris ("Norris"), and hereby submits this Memorandum in preparation for sentencing. The court previously deferred acceptance of Defendant's guilty plea. There is a Plea Agreement reach by the Defendant with the government containing an agreed upon sentence. Defendant submits that the agreed upon recommendation contained in the Plea Agreement of a 180 month sentence is a fair and appropriate sentence.

I.   MR. NORRIS'S POSITION REGARDING HIS GUIDELINE SENTENCE RANGE

As set forth in ¶ **123**[1] of the Pre-Sentence Report (PSR), the Probation Officer has calculated the Guideline Sentence Range (GSR) to be 324 to 405 months. In arriving at the GSR, the Probation Officer contends that Mr. Norris has a Category V criminal history based primarily on the mechanical scoring of 6 points for a number of juvenile offenses beginning when Mr. Norris was a young as 12 years old.

Defendant renews his objection to probation's calculation contained in the PSR of Mr. Norris's Criminal History. Defendant relies more fully on those objects attached to the PSR. In

---

[1] These paragraph references are from the "PSR" throughout this Memorandum.

response to Mr. Norris's objections, probation relied upon a First Circuit case that discussed adult convictions under USSG 4A1.1 not juvenile offenses under USSG 4A1.2 (d)[2]. Probation used the date of the earlier conspiracy contained in the indictment as the operative date of Defendant's commission of the instant offense rather than undertaking an analysis of "relevant conduct".

     USSG 4A1.2 (d) uses different language than USSG 4A1.1 in calculating the time period for adding points resulting from defendant's juvenile offenses.  USSG 4A1.2 (d) (2)  provides that points are added if the defendant was released from custody within five years of "...his commencement of the instant offense..." as opposed to USSG 4A1.1 (d) which uses the language "...if the defendant committed the instant offense..." .  This distinct change in language is an intentional deviation under the guidelines made to differentiate adult offenses and juvenile offenses and must be given its plain meaning[3].   As set forth in Application Note 7 the language of USSG 4A1.2 (d) was included in an attempt to avoid the potential of disparities in sentences and the language utilized specifically related to the defendant's actual role in the involvement or his commencement of the instant offense rather than when the defendant is charged with committing the offense.  For juvenile offenses Defendant's actual commencement or involvement in the offense requires an analysis of relevant conduct as opposed to simply using the date of the conspiracy alleged in the indictment.

---

[2] *United States v. Fermin Hernandez*, 541 F. 3d 422 (1st Cir. 2008)

[3] Any ambiguity must be resolved in favor of the defendant under the rule of lenity.

In the PSR, the government reported to probation when supplying th offense conduct that it has no information regarding Mr. Norris's early involvement in the conspiracy. Probation's refusal to engage in a relevant conduct analysis and relying simply on the earlier date of the conspiracy contained in the indictment improperly inflates Mr. Norris's criminal history. Such a result violates Due Process as it essentially penalizes Mr. Norris for having no role in the conspiracy until later yet he is harshly placed in a high criminal history category because the overall earlier conspiracy was closer in time to minor juvenile offenses committed as early as when he was 12 years old. Mr Norris is penalized because of his age where other older offenders similarly situated would not face such a harsh consequence.

Mr. Norris also objects to probation's unilateral determination that these juvenile offenses resulted in a period of confinement as provided under USSG 4A1.2 (d) (2). The PSR indicated that Mr. Norris was adjudicated delinquent and placed in DYS custody for these offenses. Under Massachusetts law this disposition does not necessarily mean a period of confinement. Massachusetts permits a juveniles to be committed to DYS custody without a particular term of confinement. *United States v. Gibbons*, 553 F. 3d 40, 45 (1st Cir. 2009). DYS then determines placement that could range from parental release to confinement at a secure facility. The burden is on the government to show that Mr. Norris juvenile offenses were actual periods of confinement in a secure facility as opposed to some other placement made by DYS that is less restrictive. *United States v. Brown*, 510 F. 3d 57, 74-75 (1st Cir. 2007). The PSR contains no such evidence.

II.     MR. NORRIS'S CRIMINAL HISTORY CATEGORY OVER REPRESENTS THE SERIOUSNESS OF HIS CRIMINAL HISTORY AND A DOWNWARD DEPARTURE IS REQUIRED.

It is the Defendant's position that the guideline sentencing range is overly harsh and would subject Mr. Norris to a guideline sentence that is much greater than necessary to accomplish the goal of sentencing.  See Kimbrough v. United States, 128 S. Ct. 558, 570 (2007). This is in large part to the calculation of a criminal history Category V based upon a Criminal History score of 11. ¶ 76   To the extent the court adopts the Criminal History Category of V, Defendant argues that a downward departure based upon § 4A1.3 (b) is appropriate.   To treat Mr. Norris Category V Criminal History Score as an accurate reflection of his criminal history would ignore both the nature and scope of the conspiracy, his role within that conspiracy and the general nature of offenses committed by children.  As  explained above, Mr. Norris's  criminal history is greatly exaggerated based upon the scoring and treatment under the guidelines of a number of his prior juvenile offenses.

¶ 69 Mr. Norris  received two (2) points for commission of the instant offense while under the criminal justice sentence for the June 7, 2002 juvenile offense committed when he was 12 years old.   The absurdity of this result speaks for itself.  This was a impulsive assault of a teacher who had made a remark about the death of this child's mother.  The nature and degree of the assault is unknown.  This was a 12 year old child who had lost his mother to a heroin overdose and had no contact with his father.  Perhaps the guidelines shed no compassion for such a situation but the court can certainly deviate from this draconian result.

The remaining four criminal history points for ¶ 70, ¶ 71 and  ¶ 72 are all minor possession and assault charges committed when Mr. Norris was 16 years old.  Mr. Norris had no

parental guidance, substandard foster care, little interest in education and resorted to life on the streets at the young age of 13.  Certainly the death of his mother and lack of any contact from a father figure played a role in Mr. Norris's poor choices and downward direction that he chose to take.  Mr. Norris had one offense placed on file and the remaining time he was committed to DYS custody.

In addition a number of Mr. Norris's juvenile offenses are impulse related offenses or substance abuse crimes.  Based on Mr. Norris's background, lack of any meaningful education and psychological make up the scoring of these offenses that results in a Criminal History Category V greatly over exaggerates the seriousness of Mr. Norris's criminal record.  The offense are not complex, involve much forethought or achieved any meaningful financial gain.  However the mechanical scoring for these juvenile offenses are significant.  As the Supreme Court has noted, children lack the maturity and an underdeveloped sense of responsibility. *Roper v. Simmons*, 543 U.S. 551, 569 (2005)  These qualities often result in impetuous and ill-conceived actions and decisions.  The susceptibility of juveniles to immature and irresponsible behavior means their irresponsible conduct is not as morally reprehensible as that of an adult. *Id.* at 569-70.

Given all these factors and Mr. Norris's young age a downward departure is warranted. Mr. Norris's Criminal History Category substantially over-represents the seriousness of his criminal history and the likelihood that he will commit other crimes.  A significant downward departure would achieve the goal of imposing a sentence that is sufficient, but not greater than necessary under the circumstances.  Kimbrough v. United States, 128 S. Ct. 558, 570 (2007).

III.     MR. NORRIS'S SENTENCE AFTER CONSIDERATION OF THE FACTORS SET FORTH IN 18 U.S.C. § 3553 (a)

In recognition of the fact that the United States Sentencing Guidelines were rendered "advisory" by the Supreme Court's decision in United States v. Booker/United States v. Fanfan, 543 U.S. 220, 245-246,125 S. Ct. 738 (2005), defendant submits that a sentence lower than the Guideline Sentencing Range (GSR) is appropriate when considering the factors the Court is directed to consider in imposing a sentence pursuant to 18 U.S.C. § 3553 (a)[4]. Mr. Norris requests that the court impose a sentence of incarceration that is shorter than recommended by the Guidelines and that the court accept the term of imprisonment set forth the Plea Agreement of 180 months.

Although the Sentencing Guidelines are the starting point and the initial benchmark for federal sentencing, a court should consider all the § 3553(a) factors to determine if they support the sentence requested by a party. Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 596 (2007). The court must ultimately impose a sentence that is sufficient but not greater than necessary to accomplish the goals of sentencing, including "to reflect the seriousness of the offense," "to promote respect for the law," to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant" 18 U. S. C. §3553 (a) (2); Kimbrough v. United States, 552 U.S. 85, 128 S. Ct. 558, 570 (2007).

Section 3553 (a) (1) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant when imposing a sentence. It is

---

[4] The guideline sentence yields an unduly harsh sentence arrived at primarily through application of a mechanical construct. The result does not reflect the reality of Mr. Norris's actual culpability, childhood and criminal history.

worthwhile to note that "when out side by side, the Guideline provisions and statutory provisions under section 3553 (a) often contradict on another." United States v. Myers, 353 F. Supp. 2d. 1026, 1028 (S.D. Iowa 2005), 2005 U.S. Dist. LEXIS 1342 (S.D. Iowa Jan. 26, 2005) (United States v. Ranum, 353 F. Supp. 2d. 984, 986 E.D. Wis. 2005), 2005 U.S. Dist. LEXIS 1338 (E.D. Wis. Jan. 14, 2005)). For example, under the Guidelines, courts are generally prohibited from considering the defendant's age ( § 5H1.1), education and vocational skills (§ 5H1.2. socio-economic status (§ 5H1.10), or lack of guidance as a youth (§ 5H1.12). Section 3553 (a) (1), however, requires a Court to consider these factors, as they compose the "history and characteristics" of a particular defendant and are necessary components to an individualized sentence. As explained more fully below, a sentence much shorter than recommended by the Guidelines is appropriate after consideration of those factors prohibited under the Guidelines but included under the section 3553 (a) analysis.

Sections 3553 (a) (1) requires the court to consider the history and characteristics of the defendant. As set forth more fully in this Memorandum, as well as the Pre-Sentence Report, Mr. Norris is 26 years old with limited education. It is difficult to gage how far Mr. Norris went in school given his repeated absences and dysfunctional foster care. Mr. Norris had an extremely difficult childhood and never knew his father. Mr. Norris's mother died of a heroin overdose when he was 12 years old. From this point on Mr. Norris was placed in substandard foster care where he was neglected and abused.

Mr. Norris's education deteriorated with long absences from school and overall lack of effort. As a result Mr. Norris began experimenting with illicit drugs, particularly marijuana and searched for the guidance and stability that he lacked on the streets. This poor decision making

rendered Mr. Norris ripe for repeated problems with the criminal justice system until he was discharged from DYS care when he turned 18.  This discharge was abrupt based solely on Mr Norris reaching the age of maturity and subject to automatic discharge from DYS custody.

At the age of 18 Mr. Norris found himself alone the product of substandard foster care with no life skills necessary to function in society.  Mr Norris would become easy prey to anyone who gave him attention.  Mr. Norris was abused in foster care and repeatedly told that he would amount to nothing.  In an effort to prove his detractors wrong at the age of 18 Mr. Norris sought to become relevant and accepted in society and more importantly to those people who he surrounded himself with.

The fact remains that growing up in this manner is certainly different then growing up in a suburb of Boston such as Wellesley or Hingham.  Decisions are made at a young age with no parental guidance that involved survival on these streets.  Inner city young black males are confronted with this dilemma at an early age and generally, as in this case, lack the parental guidance, education, psychological make up and common sense necessary to avoid the pitfalls of such decisions and are drawn to the easy life of criminal activity because they feel they have no chance at success otherwise.   Sadly Mr. Norris is not immune from these pressures and the nature and circumstances of this offense is partially a product of that Mr. Norris troubled childhood.

Mr. Norris's psychological difficulties are evident in the behavior which makes up his criminal history.  A large part of Mr. Norris's criminal history reflects behavior that in impulsive and reactionist to internal and external pressures.  Consistent with this behavior is the commission of the instant offense through his early interaction with Mr. Jefferys.  In a bizarre

sense Mr. Jefferys offered Mr. Norris the male guidance and structure that he lacked as a youth. Mr. Jefferys offered Mr. Norris a chance at success through the illegal and harmful conduct that makes up this criminal offense. Such irrational conduct can be explained when one considers the psychological impact of Mr. Norris's devastating childhood that most likely contribute to his tendency to be drawn to and gravitate toward the first male role model who gave him attention, offered him a chance at acceptance and to be seen as relevant. The illegal conduct against young women in this case is also be consisted with an individual who has not dealt with the anger of losing his mother at a young age and reacted impulsively and cruelly towards women based on an underlying feeling of abandonment, anger and resentment.

    Mr. Norris's decision making process, although certainly illegal and harmful, is the product of a combination of Mr. Norris's sorrowful childhood, substandard foster care, lack of guidance as a youth, overall depression, his psychological make up as well as his life experiences on the street. The Guidelines prohibit a court from consider these factors. However section 3553 (a) (1), requires a court to consider these factors, as they compose the "history and characteristics" of a particular defendant and are necessary components to an individualized sentence.

    The nature and circumstances of the offense also warrants a sentence that is lower than the advisory GSR. Mr. Norris certainly victimized these young women who were underage and engaged them in prostitution for his own financial benefit. However one woman was merely days away from turning 18 years old and the other victim had willingly accompanied Mr. Norris in traveling cross country to California. The government charged only one victim with the "force, fraud and coercion" enchantment and that involved mainly coercion and pressure rather

than brute force and fear instilled upon the victim.  The victim was duped rather than forced into the acts as alleged in this case.  Certainly there is no excuse for this conduct and the women are true victims of egregious conduct but Mr. Norris was not violent nor did he compel action by these young women by force.  Mr. Norris is not minimizing his responsibility in this matter.  However the nature and circumstances of the offense, which carries a minimum mandatory sentence of 180 months, clearly mandates that a sentence be imposed that is lower that the egregious sentence offered by the GSR.

Section 3553 (a)(2) requires the court to also consider the need for the sentence imposed to take into consideration four (4) specific factors.  These four (4) factors are as follows: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; ( C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educations or vocational training, medical care or other correctional treatment in the most effective manner.

Section 3553 (a)(2)(A) requires the court to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense.  The instant federal offense was indicted and prosecuted after enactment of increased minimum mandatory penalties for prostitution conduct involving minors. Human Trafficking now carries minimum mandatory 10 and 15 year sentences where such prior conduct did not exact such harsh penalties.  The 15 year sentence contemplated in the Plea Agreement provides just punishment and terminates this matter without the need for a trial where the victims would have to appear and relive the traumatic events.

Section 3553 (a)(2)(B) requires the court to impose a sentence that affords adequate deterrence to criminal conduct.  Again Mr. Norris's criminal history demonstrates anger control issues, impulsive behavior and substance abuse related crimes.  The 15 year sentence is a significant period of time in custody that Mr. Norris will not be released until his in his late thirties.  There is a 5 year period of supervised release with significant and restrictive conditions involving monitoring by probation.  It is Mr. Norris's intention to complete his sentence and supervised release successfully and live the remainder of his life crime free.

Section 3553 (a)(2)( c) requires the court to impose a sentence that protects the public from further crimes of the defendant.  Given Mr. Norris's age and history a lengthy period of incarceration and supervised release following that period of incarceration would certainly be more than adequate to protect the public from potential further crimes of the Defendant.  This would also provide this young man with the ability to carry on with his life upon his release.

Finally, Section 3553 (a)(2)(D) requires the court to impose a sentence that provides a defendant with educational or vocational training, or medical care, as needed.  Mr. Norris is in need of educational and vocational training.  Mr. Norris also has substance abuse issues and medical/psychological issues that can be addressed during his incarceration and after his release through various programs with the assistance of the probation department.

IV.   DEFENDANT'S RECOMMENDED SENTENCE

Given the facts as stated above, a sentence of incarceration below and the advisory guideline range is appropriate in this case.  The agreed upon sentence in the Plea Agreement of 180 months incarceration followed by a five (5) year period of supervised release is more than appropriate in this case.   Such a sentence was agreed upon by the parties after lengthy

negotiations taking into account the nature of the offense, the victims involved in this case and Mr. Norris history and background.

It cannot be understated the severed psychological harm the victims could suffer if forced to testify in this manner. Partly in an effort to avoid having the victims appear in court to testify the parties reached an agreed upon resolution in this case. This is particularly true with the victim involved in the Rhode Island incident where there is no overlap with the allegations against any other Co-Defendant. Such a sentence would provide just punishment for the federal charge, provide rehabilitative opportunities for Mr. Norris and would not be overly harsh in light of the factors set forth in this memorandum.

Mr. Norris further requests that the court recommend that he serve his sentence close to his family in Massachusetts and that the BOP take to location of his family into consideration when deciding where to place Mr. Norris. In addition Mr. Norris requests that the court recommend that the Defendant be placed at a facility that has the 500 hour drug program and further recommend that Defendant participate in this program as part of his sentence to address his drug abuse.

V.      DEFENDANT'S OBJECTION TO PROPOSED SPECIAL CONDITIONS

Mr. Norris objects to a number of special conditions proposed by probation. Mr. Norris initially points out that the proposed special condition (PSR pp. 43-46) appear to be boilerplate conditions regurgitated from a child pornography type case and not narrowly tailored to address Mr. Norris's case. Mr. Norris objects as follows:

2. Residence in a Re-Entry program is always part of a sentence of incarceration. Presently the last six (6) months are served in such a program and that period may be expanded at the end of this lengthy sentence. BOP determines the secure facility and regulates a defendant's conduct while in residence. An additional period contemplated by this proposed special condition duplicates a condition already imposed by BOP as part of Mr. Norris's sentence and is unnecessary.

3. Alcohol abuse is not remotely related to part of the offense conduct.

4. Testing for illicit drugs is appropriate but again alcohol abuse is not remotely related to part of the offense conduct.

8. Requiring a three (3) day reporting period for initial reporting as a sex offender and any subsequent change as part of a condition of supervised release may conflict with local statues governing reporting obligation as a sex offender where Mr. Norris may reside. Defendant should simply be ordered to report as required by statute or regulation in effect at that time and not by a time period imposed by probation. In addition requiring the Defendant to sign a document as part of a condition of supervised release violates Defendant's right to be free from self incrimination.

9. Defendant objects to any proposed condition that requires him as a condition of supervised release to take a polygraph test.

10. This is not a child pornography case. Possession of a computer or a internet capable device is crucial in an attempt to gain employment and become a law abiding member of society. This will be more so at the end of a 15 year sentence. Certainly probation should have the ability to monitor Mr. Norris' activities as set forth in ¶¶ 10-15 but to prohibit or limit Mr. Norris's right to possess such a device without approval of probation will be a disadvantage to Mr. Norris as he embarks on his life following incarceration. Sufficient tools should be available to Mr. Norris so he can seek employment and a computer or internet capable device is a necessary tool in today's society for anyone to succeed. To limit that

right will essentially set him up for failure and such a restriction is not narrowly tailored to address this case.

16. Certainly no contact with the victims is appropriated however a general no contact with any child under 18 interferes with the Defendant's ability to interact with his family and friends following his release from custody and gain employment  The definition of "contact" or "indirect contact" proposed by probation is vague and unclear.  Such a condition is not necessary in this case and places too much discretion on probation.

17. As set forth above interference with any third party or requiring Defendant to consent to that interference by probation will impact Defendant's ability to gain employment.  Furthermore probation advances a definition of "contact" that is beyond the scope of its obligations.  "Contact" is defined by law and what that entails 15 years from now is pure speculation.  Such a definition should not be imposed by probation.

18. Requiring probation to approve any employment is unfair to Mr. Norris.  It will be difficult enough for Mr. Norris to gain employment as a convicted felon and sex offender.  To require probation to contact and approve any potential employment essentially will chill any employer from hiring Mr. Norris.  Probation is designed to help offenders enter into and participate in society not set them up for failure.  This condition is an unnecessary obstacle in Mr. Norris attempt at rehabilitation and entry into society following his incarceration.

VI.   SPECIAL ASSESSMENT

Mr. Norris has no ability to pay a special assessment in the amount of $500. In the alternative, Mr. Norris requests that the court defer collection of this money until after completion of his sentence so as to not adversely affect any meager amounts Mr. Norris receives from his family for food, toiletries and essentials while in custody.

Respectfully submitted,  
The Defendant,  
Corey Norris,  
By his attorney,  

/s/ *Thomas J. Iovieno*  

Thomas J. Iovieno, BBO#553361  
Law Office of Thomas J. Iovieno  
345 Neponset Street  
Canton, MA 02021  
Phone: (617) 464-3300  
Fax: (781) 562-0787  

Dated: January 11, 2016

CERTIFICATE OF SERVICE

I hereby certify that this document filed on January 11, 2016 through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Thomas J. Iovieno*